# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TAWA PLC, QX REINSURANCE COMPANY LIMITED and PRO IS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 13-1427-LPS |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Of Counsel*:

Edward F. Ruberry
Ellen D. Jenkins
RUBERRY, STALMACK & GARVEY, LLC
500 W. Madison Street, Suite 2300
Chicago, IL  60661
(312) 466-8050
Ed.Ruberry@rsg-law.com
Ellen.Jenkins@rsg-law.com

*Counsel for Plaintiffs Tawa plc, QX Reinsurance Company Limited and PRO IS, Inc.*

Collins J. Seitz, Jr. (Bar No. 2237)
David E. Ross (Bar No. 5228)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
dross@seitzross.com

*Counsel for Plaintiffs Tawa plc, QX Reinsurance Company Limited and PRO IS, Inc.*

Dated:  November 27, 2013

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ................................................................................1

COUNTERSTATEMENT OF FACTS ................................................................4

ARGUMENT ......................................................................................................7

I.     Standard of Review..............................................................................7

II.    The Tawa Group Has Not Asserted Any Extra-Contractual Fraud Claims.............9

III.   The First Amended Complaint States Claims For Equitable Fraud ......................9

A.  The Knowledge Qualifier Does Not Relieve Penn National of Liability ........10

B.  The Tawa Group Has Invoked Equity Jurisdiction.........................................11

IV.   The Tawa Group Has Adequately Alleged Claims Based On Section 3.8(a) ...... 13

A.  The Eleventh-Hour Production of the Dackman Tenant List is a Red Herring ...............................................................................................13

B.  The Allegations of Materiality are Sufficient .................................................14

C.  The Allegations of Knowledge are Sufficient .................................................17

V.    The Tawa Group Has Adequately Alleged Claims Based on Section 3.8(b) ....... 18

A.  Penn National Ignores Contractual Language Undermining its Defense ........18

B.  The Section 3.8(b) Claims Satisfy Rule 9(b)...................................................19

VI.   The Tawa Group Has Adequately Alleged Claims Based on Section 3.8(c) ....... 19

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................................8, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................7, 14

*DCV Holdings, Inc. v. Conagra, Inc.,*
    889 A.2d 954 (Del. 2005) ...................................................................................11

*DiMare v. Met-Life Ins. Co.,*
    369 F. App'x 324 (3d Cir. 2010) .........................................................................19

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)............................................................................6, 8

*Gaffin v. Teledyne, Inc.,*
    611 A.2d 467 (Del. 1992) ...................................................................................10

*Gerbitz v. ING Bank, FSB,*
    2013 U.S. Dist. LEXIS 134025 (D. Del. Sept. 19, 2013) ...................... 7, 8-9, 19

*In re Advanta Corp. Sec. Litig.,*
    180 F.3d 525 (3d Cir. 1999)..............................................................................17

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997).............................................................................6

*In re ENSTAR Corp.,*
    604 A.2d 404 (Del. 1992) ...................................................................................12

*In re Phila. Stock. Exch.,*
    945 A.2d 1123 (Del. 2008) .................................................................................12

*Lincoln Nat'l Life Ins. Co. v. Snyder,*
    722 F. Supp. 2d 546 (D. Del. 2010).....................................................................14

*McAnulla Elec. Constr., Inc. v. Radius Techs., LLC,*
    2010 WL 3792129 (Del. Super. Ct. Sept. 24, 2010)...........................................13

*McMahon v. New Castle Assocs.,*
    687 F. Supp. 138 (D. Del. 1988).........................................................................12

*Metro Commc'ns Corp. v. Advanced Mobil Techs., Inc.,*
    854 A.2d 121 (Del. Ch. 2004)............................................................................11, 17

*Norton v. Poplos,*
    443 A.2d 1 (Del. 1982) .......................................................................................12

*Price Auto. Grp. v. Royal Imports Toyota, Inc.,*
    2002 Del. Super. LEXIS 252 (Del. Super. Ct. Sept. 25, 2002) .........................11

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984)................................................................................9

*Shore Builders, Inc. v. Dogwood, Inc.,*
    616 F. Supp. 1004 (D. Del. 1985).....................................................................12

*Stephenson v. Capano Dev., Inc.,*
    462 A.2d 1069 (Del. 1983) ...........................................................................9, 10

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
    901 A.2d 106 (Del. 2006) .................................................................................11

*Wilkerson v. New Media Tech. Charter Sch. Inc.,*
    522 F.3d 315 (3d Cir. 2008)................................................................................8

*Woods v. Maytag Co.,*
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ..............................................................19

## SUMMARY OF ARGUMENT

This is not a case of "buyer's remorse"; nor does it involve "manufactured claims." And, while Delaware courts routinely hold parties to their contractual bargains, they do not do so where the contracts at issue were procured through fraud. *That* is the situation this case presents.

Defendant ("Penn National") and Plaintiffs (the "Tawa Group") entered into the contracts at issue here, a Master Transaction Agreement (the "MTA") and four Ancillary Agreements, on March 31, 2011. Under these contracts, the Tawa Group agreed to reinsure, up to an aggregate limit of $100,000,000, the lead paint risks associated with landlord liability policies Penn National issued for residential properties in and around Baltimore. For this $100,000,000 in reinsurance coverage, Penn National paid a premium of $58,975,000. Because the liabilities on the program now appear certain to exceed $100,000,000, the Tawa Group is facing a $41+ million loss.

In advance of the transaction, the Tawa Group performed considerable due diligence to set a premium that would be *greater* than the amount the Tawa Group would have to pay under the reinsurance agreement. Toward that end, the Tawa Group attempted to calculate an adequate reserve not only for lead paint claims that had already been reported to Penn National but also for lead paint claims that would be reported to Penn National in the future. In making these calculations, the Tawa Group relied on Penn National to provide a list of *all* reported claims, to make available *all* files relating to such claims, and to make complete disclosure of *all* data and information material to the losses proposed to be reinsured. To protect itself against deception, the Tawa Group insisted that Penn National make express representations and warranties in the MTA about the completeness of the files, data and information furnished during the due

diligence process, and agree to indemnify the Tawa Group for any "Loss" resulting from any breach or inaccuracy of those representations and warranties.

After the transaction closed, the Tawa Group learned that Penn National had breached three of the MTA's representations and warranties—those set forth in Sections 3.8(a), (b) and (c)—and that it had done so fraudulently. The most glaring example is Penn National's failure during due diligence to disclose the "Dackman Tenant List," a 414-page directory of people who applied to reside in the rental properties owned by a landlord Penn National insured, Elliott Dackman. While Penn National dismisses the Dackman Tenant List as "immaterial," the Tawa Group alleges that the document was material because, had Penn National not concealed it, the Tawa Group would have recognized the sharply higher magnitude of the lead paint risk and either charged a higher premium or abandoned the transaction altogether.

Contradicting the allegations in the First Amended Complaint and insisting that it was "completely forthcoming and honest throughout its dealings with Plaintiffs," Penn National makes several arguments in support of its motion. Penn National leads with its argument that the Tawa Group's claims based on extra-contractual misrepresentations must fail. But the Tawa Group does not base any of its claims on extra-contractual misrepresentations; the Tawa Group bases *all* of its claims exclusively on Penn National's alleged breaches of MTA Sections 3.8(a), (b) and (c).

Penn National next argues that the Tawa Group cannot proceed on an equitable fraud theory because, while actual knowledge is not an element of an equitable fraud claim under Delaware law, the "knowledge qualifier" in Sections 3.8(a), (b) and (c) imposes the requirement of actual knowledge on Penn National's part. This argument collapses because the knowledge qualifier specifies that Penn National could breach Sections 3.8(a), (b) and (c) *either* by its

2

having actual knowledge of the misrepresentation *or* by its failure to undertake a "reasonable inquiry and investigation" of the represented matter.  The Tawa Group pleads that Penn National either knew of its misrepresentations and, thus, committed common law fraud, or failed to undertake a reasonable inquiry and investigation and, thereby, committed equitable fraud.  Penn National attacks the equitable fraud claims on the alternative ground that the Tawa Group has not properly invoked "equity's special jurisdiction."   This argument misses the mark because Delaware law allows contracting parties to pursue rescission, which is always an *equitable* remedy, based upon equitable fraud, that is, based upon an unknowing yet material misrepresentation.

Penn National attacks the Tawa Group's Section 3.8(a) claims, first on the ground that Penn National produced the Dackman Tenant List "prior to closing."   While Penn National produced the Dackman Tenant List the day before the deal closed, Penn National warranted in Section 3.8(a) that it had disclosed all material information *during the due diligence phase*, which ended several weeks earlier.  Penn National also urges dismissal of the Section 3.8(a) claims because the First Amended Complaint contains only "conclusory" allegations of materiality that do not satisfy Rule 12(b)(6) or Rule 9(b).  In fact, the First Amended Complaint describes how disclosure of the Dackman data would have changed the Tawa Group's assessment of the risk.  Penn National similarly asserts that the First Amended Complaint alleges no particularized facts indicating that any individual within Penn National had actual knowledge of the Dackman Tenant List's materiality.  The pleading's detailed allegations describing Karen Yarrish's involvement with the Dackman Tenant List and the transaction belie that assertion, and, in any event, Rule 9(b) permits plaintiffs to plead knowledge *generally*.

3

Penn National posits that the Tawa Group's claims predicated on Section 3.8(b) must fail because Penn National disclosed the information required to be included on Schedule 3.8(b)—a comprehensive list of all claims—on a different schedule. Penn National points out that the contract states that information disclosed on one schedule is disclosed for purposes of all schedules. But Penn National fails to address the qualifying language following that statement that defeats its argument. Invoking Rule 9(b), Penn National also argues that the Section 3.8(b) claims are deficient because the First Amended Complaint does not identify the omissions from Schedule 3.8(b), but Rule 9(b) does not require that level of specificity.

Finally, Penn National argues that the Tawa Group's Section 3.8(c) claims are time-barred under a contract provision that imposed an 18-month deadline on indemnification claims for breach or inaccuracy of any representation or warranty in the MTA. Although the Tawa Group's Claims Notice served within that 18-month period did not refer to Section 3.8(c), Penn National could avoid the Section 3.8(c) indemnification claims—which involve Penn National's failure to make available all of the claim files during the due diligence phase—only if it could show that it was actually prejudiced by any untimely notice. Penn National cannot make that showing. In any event, that 18-month deadline does not apply to the Tawa Group's Section 3.8(c) *fraud* claims. With respect to those claims, Penn National once again invokes Rule 9(b)'s particularity requirement but cites no authority for its proposition that Rule 9(b) would require the Tawa Group to identify *at the pleading stage* the precise materials Penn National failed to make available as the Tawa Group was deciding whether to proceed with the transaction.

## COUNTERSTATEMENT OF FACTS

Penn National's recitation of "facts" cannot be reconciled with the First Amended Complaint or the MTA. For example, in discussing the "knowledge qualifier" built into MTA

Sections 3.8(a), (b) and (c), Penn National cites case law and a law review article for the proposition that such a qualifier "has the effect of shifting the focus . . . from an inquiry into whether the facts asserted were true *to whether, on the basis of what he knew, the [party making the representations] believed them to be true*."  (Opening Brief (Docket No. 17) ("Op. Br.") at 4) (Emphasis in original.)   In other words, Penn National wants the Court to review its alleged misrepresentations under a subjective standard.  Unlike the knowledge qualifiers construed in the cited materials, however, the MTA's knowledge qualifier expressly imposed on Penn National a duty to reasonably inquire and investigate before making its representations and warranties.  This duty negates Penn National's thesis that the Tawa Group must plead and prove *actual knowledge* to sustain its claims.

Also, while Penn National correctly quotes parts of Sections 6.3(a) and 6.4(c), it fails to quote that portion of 6.3(a) that requires Penn National to show actual prejudice if it seeks to avoid a claim noticed outside the 18-month deadline.  Penn National also fails to acknowledge that the procedures in Article VI apply to *indemnification* claims only.  Moreover, Article VI includes a separate provision, Section 6.4(i), that addresses fraud claims directly:

> Nothing contained in this <u>ARTICLE VI</u> will limit in any way any remedies available to any Party or its Affiliates in respect of fraud or willful misconduct in connection with the transactions contemplated hereby.[1]

Penn National also argues that certain purported defects in the Dackman Tenant List render the List "immaterial."  For example, Penn National argues the List had *no* actuarial value because it addresses only some of Mr. Dackman's properties and none of the properties owned by the 30 other insured landlords.  (Op. Br. at 7)  The law, however, forbids Penn National from relying upon purported facts, such as these, that are beyond the First Amended Complaint and

---

[1] Section 6.5, the MTA's "Exclusive Remedy" provision, likewise makes an exception for fraud claims.

the documents integral thereto.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (instructing that, on a motion to dismiss, a district court may not consider matters extraneous to the pleading except for documents integral to or relied up in the pleading).

Penn National also criticizes the Dackman Tenant List because it "does not relate to the 1991 to 1997 time period covered by the MTA, and does not identify the children who were exposed to lead paint at one of Mr. Dackman's properties (*i.e.*, 'the universe of potential claimants' who might bring a claim against Mr. Dackman)."  (Op. Br. at 7)  As a matter of law, Penn National can only succeed on its motion if it can establish that it is implausible that the Dackman Tenant List would have been of any value to the Tawa Group in its actuarial analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (discussing post-*Iqbal* requirement that allegations must be sufficient to show a "plausible" claim for relief).

Penn National cannot carry its burden of establishing that the Tawa Group's actuaries could not have drawn *any* useful conclusions from the Dackman data.  As Penn National acknowledges, the Dackman Tenant List includes the dates of birth of the applicants' children or their ages on certain dates, so the actuaries could have easily determined which of these children could assert claims within the Maryland statute of limitations.  And, although the Dackman Tenant List does not indicate which of the children were exposed to lead paint, it is reasonable to infer that the actuaries would have considered *all* of the listed children as potential claimants, at least in developing "worst case" scenarios, or asked Penn National for additional and clarifying information bearing on the potential exposure.

Penn National emphasizes that it produced the Dackman Tenant List as part of the "Books and Records" delivered to the Tawa Group two days before the transaction closed.  The Tawa Group explains later in this brief why that disclosure did not cure Penn National's breach

6

of Section 3.8(a).  For present purposes, the Tawa Group only notes its version of the events surrounding the eleventh-hour production, as alleged in its pleading:

> 66.    Also on March 28, 2011, Ms. Yarrish sent by overnight mail to the Tawa Group's counsel—not to the Tawa Group's actuaries who had performed the due diligence and completed it several weeks earlier—six CDs purporting to contain the set of materials constituting the Books and Records, which materials were not the subject of any representations or warranties.  Upon information and belief, at the time she sent the package, Ms. Yarrish knew that the Tawa Group's actuaries performed its due diligence and that its counsel had no role in due diligence. The set of materials was voluminous and included policy files, specimen policy forms, miscellaneous claims information, miscellaneous underwriting information, third-party Reinsurance Agreements, and numerous other items.  Buried among those materials, specifically within the miscellaneous claims information, was the Dackman Tenant List.  This was the first time Penn National ever mentioned or gave the Dackman Tenant List to the Tawa Group, as Penn National had failed to mention or give the Dackman Tenant List to any member of the Tawa Group during the due diligence phase, *i.e.*, as it was reviewing and investigating the Subject Business.

As this paragraph recounts, Penn National did not disclose the Dackman Tenant List to the Tawa Group *during the due diligence phase* of the transaction, which under the MTA was to end on or before March 14, 2011, and which, as the Tawa Group alleges (in paragraph 12 of the First Amended Complaint), actually ended several weeks earlier.

## ARGUMENT

I.    Standard of Review

Rule 8 of the Federal Rules of Civil Procedure governs the sufficiency of pleadings in non-fraud cases.[2]  That Rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."   A non-fraud claim need not be pleaded with particularity but must merely "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[2] Rule 8 matters here because Count X of the First Amended Complaint is a claim for contractual indemnity based on Penn National's *non-fraudulent* breach of the warranties set forth in Sections 3.8(a), 3.8(b) and 3.8(c).

When addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district courts are to conduct a two-step analysis. *Fowler*, 578 F.3d at 210; *Gerbitz v. ING Bank, FSB*, 2013 U.S. Dist. LEXIS 134025, at *3 (D. Del. Sept. 19, 2013). The first step is to separate the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler*, 578 F.3d at 210-11; *Gerbitz*, 2013 U.S. Dist. LEXIS 134025, at *3. In so doing, courts are to draw all reasonable inferences in favor of the non-moving party. *Gerbitz*, 2013 U.S. Dist. LEXIS 134025, at *3.

The second step is to determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plausibility in this context means that the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is sufficient under Rule 12(b)(6) so long as it states "enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim. *Gerbitz*, 2013 U.S. Dist. LEXIS 134025, at *4 (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)) (internal quotation marks omitted).

Rule 9(b) of the Federal Rules of Civil Procedure governs the sufficiency of pleadings in fraud cases. That Rule requires a fraud plaintiff "to state with particularity the circumstances constituting fraud," but it also clarifies that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Although date, place, and time allegations may fulfil the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently 'to place the defendants on notice of the precise misconduct with which they

8

are charged . . . .'"  *Gerbitz*, 2013 U.S. Dist. LEXIS 134025, at *5 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

The Amended Complaint easily satisfies the requirements of Rule 8, Rule 9(b) and Rule 12(b)(6), such that all of the Tawa Group's claims should survive the motion to dismiss.

## II.     The Tawa Group Has Not Asserted Any Extra-Contractual Fraud Claims

Penn National's first and featured argument is that certain provisions in the MTA bar the Tawa Group's claims "[t]o the extent [they] are based on alleged misrepresentations outside the MTA."  (Op. Br. at 12)  In fact, the Tawa Group bases all ten of its claims exclusively on Penn National's alleged breaches of MTA Sections 3.8(a), (b) and (c).  Indeed, in each and every Count the Tawa Group identifies the precise *contractual* representation and warranty underlying the claim.    Although  it  appears  that  Penn  National  also  made  *extra-contractual* misrepresentations, including those appearing in paragraphs 25, 28, 63 and 71 of the First Amended Complaint, the Tawa Group has recited those misrepresentations only to place its claims in context and to buttress its allegations that the information and materials Penn National withheld during due diligence were material.

## III.     The First Amended Complaint States Claims For Equitable Fraud

In Counts IV, V, VI and VIII of the First Amended Complaint, the Tawa Group asserts claims based on Penn National's alleged equitable fraud.  Under Delaware law, a cause of action for equitable fraud does not require the defendant to have known or to have believed its statement was false or to have made its statement in reckless disregard of the truth.  *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983).  Thus, equity provides a remedy for negligent or innocent misrepresentations where the common law does not.[3]  *Id.*

---

[3] In Delaware, the elements of common law fraud are the following:  1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with

A.    The Knowledge Qualifier Does Not Relieve Penn National of Liability

Penn National argues that the Tawa Group's equitable fraud theory is inconsistent with the knowledge requirement embedded in Sections 3.8(a), (b) and (c).  Penn National phrases its position this way:

> because the representations in Sections 3.8(a), (b) and (c) are qualified by the "Knowledge of Cedent" knowledge qualifier, in order for Plaintiffs to succeed on a claim under these sections, Plaintiffs must show that one of six Penn National employees had actual knowledge that a representation in one of the sections was false.

(Op. Br. at 13-14)

In fact, the MTA defines "Knowledge" as "the actual knowledge, *after reasonable inquiry and investigation*," of the six specified individuals, including Karen Yarrish, Penn National's General Counsel.  (Emphasis added.)  Given this definition, the Tawa Group could prove a misrepresentation *either* by showing that one of those six individuals had actual knowledge that the representation was false *or* by showing that none of them had undertaken a "reasonable inquiry and investigation" before the false representation was made.  The manifest purpose of the "reasonable inquiry and investigation" requirement—which Penn National all but ignores in its brief—is to place the risk of loss resulting from *unknown but knowable* misrepresentations on Penn National.

Consistent with this theory, the First Amended Complaint alleges the following in support of the equitable fraud claim stated in Count IV:

> 132.    Even if Penn National did not have actual knowledge of the falsity of the misrepresentation of fact in Section 3.8(a), it would have gained such actual

---

reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.  *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 472 (Del. 1992).  To state a prima facie case for equitable fraud, a plaintiff must satisfy all of the elements of common law fraud except the element that the misstatement or omission was made knowingly or recklessly.  *Stephenson*, 462 A.2d at 1074.

knowledge had Ms. Yarrish undertaken a reasonable inquiry or investigation into the materiality of the Dackman Tenant List, as the MTA required.[4]

Penn National cites only inapposite decisions to support its argument that the knowledge qualifier bars all claims for equitable fraud. *DCV Holdings, Inc. v. Conagra, Inc.*, 889 A.2d 954, 960 (Del. 2005), and *Price Automotive Group v. Royal Imports Toyota, Inc.*, No. 01C-06-165, 2002 Del. Super. LEXIS 252, at *16 (Del. Super. Ct. Sept. 25, 2002), are distinguishable because the knowledge qualifiers construed in those cases were not conditioned on a party's having conducted a reasonable inquiry and investigation.  In fact, *Price* notes that many courts have declined to imply a duty of inquiry or investigation when a party has made a warranty to its "best knowledge."  2002 Del. Super. LEXIS 252, at *16-24.  This case is different because the MTA's knowledge qualifier explicitly imposed an affirmative duty on Penn National to reasonably inquire and investigate before making its representations and warranties.  The Tawa Group alleges that Penn National breached that duty and is liable for the resultant loss under an equitable fraud theory.[5]

B.   The Tawa Group Has Invoked Equity Jurisdiction

Penn National also declares that this Court lacks jurisdiction to adjudicate the Tawa Group's equitable fraud claims, but that is incorrect.  Under Delaware law, equitable fraud "can only be applied in those cases in which one of the two fundamental sources of equity jurisdiction exist:   (1) an equitable right founded upon a special relationship over which equity takes jurisdiction,   or   (2) where equity affords a special remedy (e.g., rescission or cancellation)."  *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006).  The

---

[4] Similar allegations appear in paragraphs 143, 157 and 183 in support of the Tawa Group's other equitable fraud claims.

[5] The other decision on which Penn National relies, *Metro Communications Corp. v. Advanced Mobil Technologies, Inc.*, 854 A.2d 121 (Del. Ch. 2004), is also inapposite.  There, the court held that an equitable fraud claim arising out of communications from an entity to its equity shareholders would conflict with the specific state of mind requirements developed in the context of federal and state securities fraud.  But as Penn National well knows, the instant case is not a securities fraud case.

Tawa Group is entitled to bring claims for equitable fraud under the second prong of this test because it seeks an equitable remedy: rescission of the MTA and the Ancillary Agreements.

Penn National insinuates that rescission is not always an equitable remedy. The lower court decisions Penn National cites are, however, inconsistent with Delaware Supreme Court precedent.[6] This Court's charge when ruling on an issue of Delaware law is to predict how the Delaware Supreme Court would rule. *McMahon v. New Castle Assocs.*, 687 F. Supp. 138, 141 (D. Del. 1988). And with respect to this issue, the Delaware Supreme Court has held repeatedly that rescission is an *equitable* remedy. *See, e.g., In re Phila. Stock. Exch.*, 945 A.2d 1123, 1137 (Del. 2008); *In re ENSTAR Corp.*, 604 A.2d 404, 413 (Del. 1992); *Norton v. Poplos*, 443 A.2d 1, 4 (Del. 1982). Thus, the Tawa Group is entitled to bring claims for equitable fraud because it seeks rescission of the MTA and the Ancillary Agreements.

In *Norton*, the Delaware Supreme Court recognized the right of a contracting party to rescind on the basis of equitable fraud, *i.e.*, an unknowing misrepresentation, so long as the party can show 1) that the misrepresentation was material, 2) that it induced him to execute the contract, and 3) that his reliance on the misrepresentation was justified. 443 A.2d at 4; s*ee also Shore Builders, Inc. v. Dogwood, Inc.*, 616 F. Supp. 1004, 1016 (D. Del. 1985) (allowing rescission claim based on innocent misrepresentation to proceed and noting the availability of such claims in the context of both executed and executory contracts). Counts IV through VI satisfy all of the *Norton* requirements. The MTA's knowledge qualifier changes the ground rules here and would only allow the Tawa Group's equitable fraud claims to proceed with allegations and, ultimately, proof that Penn National did not reasonably inquire and investigate before

---

[6] The Delaware cases in this area typically arise in the context of venue disputes between the Delaware law courts and the Delaware chancery courts.

representing and warranting the facts set forth in Sections 8.3(a), (b) and (c).  The Tawa Group has made such allegations and will later present its proof.

In short, because the MTA allows the parties to assert fraud claims and because Delaware law allows for rescission based on equitable fraud, Counts IV, V and VI are viable as pled.

IV.   The Tawa Group Has Adequately Alleged Claims Based On Section 3.8(a)

A.   The Eleventh-Hour Production of the Dackman Tenant List is a Red Herring

Penn National notes that on March 28, 2011, three days before the deal closed, it sent the Dackman Tenant List to the Tawa Group as part of the "Books and Records" related to its lead paint claims.  (Op. Br. at 8, 16)  Penn National then argues (in a footnote) that the Tawa Group had a duty to review the Books and Records prior to the closing, as if the eleventh-hour production charged the Tawa Group with knowledge of the contents.  (*Id.* at 9 n.9)  Penn National's authority, *McAnulla Electrical Construction, Inc. v. Radius Technologies, LLC*, 2010 WL 3792129 (Del. Super. Ct. Sept. 24, 2010), is of no moment, however, because the principle espoused there—that a contracting party must read its contract and all documents incorporated into the contract by reference—has no application here, as no provision incorporates the Books and Records into the MTA, by reference or otherwise.

Furthermore, Penn National warranted in Section 3.8(a) that:  1) prior to the date of the MTA in connection with the Tawa Group's review and investigation of the Subject Business—*i.e., during due diligence*—it delivered true and correct copies of all documents, data and other information set forth on Schedule 3.8(a); and 2) to the Knowledge of Penn National, that delivery represented complete disclosure of all data and information material to the losses being reinsured under the Reinsurance Agreement.  Thus, if the Dackman Tenant List was material to the losses being reinsured under the Reinsurance Agreement—and the Tawa Group alleges that it

was—then Penn National breached Section 3.8(a) by not delivering the Dackman Tenant List *during due diligence*, which, as the Tawa Group alleges in paragraph 12 of the First Amended Complaint, ended several weeks before the March 31, 2011 closing.  Penn National's inclusion of the Dackman Tenant List in the Books and Records sent to the Tawa Group on March 28, 2011, did not cure the breach.

> B.      The Allegations of Materiality are Sufficient

Penn National next posits that the Tawa Group's materiality allegations are insufficient under *Twombly*, *Iqbal* and Rule 9(b).  Penn National calls them "conclusory," and insists the First Amended Complaint includes *no* facts that, if true, would support the Tawa Group's allegation that the Dackman Tenant List was material.  (Op. Br. at 17)  But the Tawa Group's allegations of materiality are not "conclusory"; that is, they do not merely call the Dackman Tenant List "material" and stop there.  On the contrary, the First Amended Complaint explains how disclosure of the Dackman Tenant List during due diligence would have altered the Tawa Group's decision to enter into the transaction, at least on the agreed terms.  This is the essence of materiality in the context of rescission.  *See Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 560 (D. Del. 2010) (denying Rule 12(b)(6) and Rule 9(b) motion to dismiss claim to void fraudulently obtained insurance policy where the insurance company alleged without elaboration that it would have either issued no policy or issued a policy with a lower face value had the application been truthful).

In paragraph 69, the Tawa Group alleges that "[t]he information and data Penn National provided to the Tawa Group during the due diligence process related almost exclusively to Penn National's past claims experience and reinsurance arrangements," and that "Penn National did not disclose to the Tawa Group, as it was conducting its due diligence, any data—such as that

14

appearing in the Dackman Tenant List—reflecting the number of insured units or the number or ages of the individuals that may have been exposed as children to lead paint at the insured properties, even though the Tawa Group previously asked for it."  The Tawa Group goes on to allege (in paragraph 72) that:

> the Dackman Tenant List would have been extremely beneficial to the Tawa Group's underwriting of the transaction, as it would have enabled the Tawa Group to better understand and include in its calculations the universe of potential claimants and to better appreciate the level of uncertainty attendant to the transaction.  Indeed, had Penn National disclosed the Dackman Tenant List during the due diligence phase, the Tawa Group would have recognized the sharply higher magnitude of the risk and either charged a drastically higher reinsurance premium that would have been unacceptable to Penn National or abandoned the transaction altogether.

From these allegations, the materiality of the Dackman Tenant List is both plausible and apparent:  the Dackman Tenant List was material because it reflected that the number of insured units and the number of children who may have resided in those units was *much* larger than the Tawa Group had understood from its review of the historic claims information Penn National provided.  Although the data may have been incomplete, the Tawa Group has alleged that its internal and external actuaries would have nevertheless recognized the significantly higher magnitude of the risk had they seen the Dackman Tenant List during due diligence.  The obvious implication is that even if the Dackman data were incomplete, the Tawa Group's actuaries could have taken a sampling of the data, compared it to the list of actual claimants and extrapolated meaningful conclusions that would have enhanced their effort to arrive a reinsurance premium based on a fuller picture of the risk presented.  As the First Amended Complaint recounts (in paragraph 70), the actuaries were stunned in 2012, when they first saw the Dackman Tenant List.

Attempting to portray the Dackman Tenant List as useless, Penn National notes that it does not identify children born after the submission of the rental application or children who

visited or temporarily resided at one of Mr. Dackman's properties. (Op. Br. at 17-18) But the absence of that information does not justify Penn National's withholding of the List, for it is reasonable to infer that if the Tawa Group's actuaries had seen it, they would have recognized those gaps and understood that the risk was *even more significant* than the compiled data revealed it to be.

Penn National also calls the Dackman Tenant List "temporally overbroad" because it includes information about applications submitted from the 1960s through 2009 (well before and after the relevant 1991 to 1997 time period). (*Id.*) But because the Dackman Tenant List specifies the birthdates of the applicants' children or their ages on specific dates, it is reasonable to infer that the List would have allowed the Tawa Group to identify (and count) those children who could be potential claimants. The Dackman Tenant List also would have informed the Tawa Group about the number of Dackman properties at issue, about whether the units would typically include families with children (or multiple children), and how often the units were changing hands.

Also, the First Amended Complaint reflects that the Tawa Group's actuaries attempted during due diligence to predict the outermost magnitude of the risk. For example, paragraph 17 reads as follows:

> 17. As it was considering the most or more likely future claim scenarios, the Tawa Group also took into account a range of possible outcomes, including bad or worst case scenarios, and attempted to calculate how likely (or unlikely) such outcomes might be. The Tawa Group undertook its various analyses in order to better understand the magnitude of the risk it was being asked to reinsure and the level of uncertainty attendant to the transaction.

From this allegation, the Court can reasonably infer that the actuaries would have assumed, at least for some purposes, that *all* of the listed children were exposed to lead paint at a Dackman property and, thus, were potential claimants. As the Tawa Group alleges, this assumption would

have ineluctably led the Tawa Group either to increase the reinsurance premium dramatically or walk away.

The Tawa Group's materiality allegations are sufficient under Rule 9(b).

C.     The Allegations of Knowledge are Sufficient

So, too, are its knowledge allegations. In paragraphs 62, 66, 68 and 69 of the First Amended Complaint, the Tawa Group contends: that Ms. Yarrish was aware of the Dackman Tenant List; that she headed the department that coordinated the project; that she knew the Dackman Tenant List was not included on Schedule 3.8(a); that she personally sent a copy of the Dackman Tenant List to the Tawa Group's counsel on March 28, 2011; and that the materiality of the Dackman Tenant List would have been obvious to any reasonable observer and would have been obvious to Ms. Yarrish had she undertaken a reasonable inquiry and investigation. Penn National argues that these allegations are not sufficiently particularized to satisfy Rule 9(b). This argument is baseless, as Rule 9(b) expressly states that "knowledge, and other conditions of a person's mind may be alleged *generally*." (Emphasis added.) It would have been enough for the Tawa Group simply to allege that Ms. Yarrish had knowledge—although the First Amended Complaint goes far beyond that.

To support its (faulty) premise, Penn National relies on *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999), but that decision was rendered in a securities fraud action brought under Rule 10b-5. Indeed, the *Advanta* court noted that Rule 9(b) allows state of mind to be averred generally but then added that the federal securities laws expressly require plaintiffs to "state with particularity facts giving rise to a strong inference" of scienter. 180 F.3d at 531 n.5. The court concluded that this requirement supersedes Rule 9(b) as it relates to 10b-5 actions, which this action is not. Penn National's reliance on *Metro Communications Corp.* is

even more perplexing—and equally as unavailing—given that the court in *Metro* was interpreting *Court of Chancery Rule 9(b)*, not *Federal Rule of Civil Procedure 9(b)*.

V.      The Tawa Group Has Adequately Alleged Claims Based on Section 3.8(b)

Penn National attacks the Tawa Group's Section 3.8(b) claims on two flanks.  First, Penn National argues that its failure to provide a complete claims register on Schedule 3.8(b) is excusable because "almost all" of the claims allegedly left off that schedule were listed on Schedule 3.8(a) (Op. Br. at 19).  Second, Penn National argues that the Tawa Group has violated Rule 9(b) by not specifically identifying in its pleading what claims Schedule 3.8(b) omitted. (*Id.*)  Neither argument has merit.

A.      Penn National Ignores Contractual Language Undermining its Defense

According to Penn National, the Tawa Group's claims predicated on Section 3.8(b) must fail because Penn National disclosed "almost all" of the information in question—a comprehensive register of *all* reported claims—just not on Schedule 3.8(b), the schedule that Penn National warranted contained this information.  (Op. Br. at 19)  By this argument—and its related assertion, based on matter extraneous to the First Amended Complaint, that Schedule 3.8(a) identified 259 of the 261 omitted claims—*Penn National has admitted its breach*.  The analysis can and should end there.

Recognizing its problem, Penn National seeks refuge in the following language in the Cedent Disclosure Schedule:  "Any disclosure made in any section of the Cedent Disclosure Schedule shall be deemed disclosed for all purposes of the [MTA] and all other sections of the Cedent Disclosure Schedule."  But Penn National ignores the qualifier immediately following that language:  "*to the extent that it is reasonably apparent on its face that such disclosure is applicable to such other sections of the Cedent Disclosure Schedule.*"  (Emphasis added.)  Penn

18

National has not argued—nor could it—that it is reasonably apparent from the face of Schedule 3.8(a) that the claims information included therein is meant to constitute disclosure for purposes of Schedule 3.8(b).  There is nothing on the face of Schedule 3.8(a) to that effect.[7]

B.      The Section 3.8(b) Claims Satisfy Rule 9(b)

Penn National also argues that the Section 3.8(b) claims fail under Rule 9(b) because the First Amended Complaint does not identify the claims omitted from Schedule 3.8(b).[8]  (Op. Br. at 19-20)  But in the decision Penn National cites for that proposition, *Woods v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011), the court held that the products-liability plaintiff suing there was *not* required to allege the precise details of the latent defect in the oven defendant had designed in manufactured.  By pleading that Penn National breached its warranty in Section 3.8(b) of the MTA when it furnished an incomplete claims register upon closing, the Tawa Group has explicitly pled the "who, what, where, when, how and why" of its Section 3.8(b) fraud claims.  *See Gerbitz*, 2013 U.S. Dist. LEXIS 134025, at *8-9 (denying motion to dismiss where the plaintiff had explicitly pled such facts).  The Tawa Group has met the Rule 9(b) pleading standard and provided Penn National "sufficient notice as to the 'misconduct with which it is charged.'"  *Id.* at *10 (quoting *DiMare v. Met-Life Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010)).

VI.     The Tawa Group Has Adequately Alleged Claims Based on Section 3.8(c)

Invoking MTA Sections 6.4(c) and 6.3(a), Penn National argues that the Section 3.8(c) claims—Counts III, VI, VII, VIII, IX and X—are time-barred because the Claim Notice the Tawa Group served within the 18-month contractual deadline did not mention Section 3.8(c).

---

[7] Indeed, Schedule 3.8(a) is over *1600 pages long* and consists of a wide variety of documents and communications pertaining to the reported lead paint claims.  Penn National has culled only a small subset of those pages and attached them to its brief as Exhibit C.

[8] This argument can have no application to the Tawa Group's contractual indemnity claim for (non-fraudulent) breach of the Section 3.8(b) warranty, *i.e.*, Count X, because Rule 9(b) applies only to fraud claims.

Under Section 6.3(a), however, untimely notice of a particular claim does not impair the right of the party asserting it unless the other party was "actually prejudiced thereby."  Penn National has not even attempted to explain how it was actually prejudiced by the Claim Notice's omission of Section 3.8(c)—a tall order given the detailed factual allegations the Claims Notice included.  (A draft complaint substantially similar to the First Amended Complaint accompanied the Claim Notice.)

But even if the eighteen-month limitations period were hard and fast, the *only* Section 3.8(c) claim that would not survive would be the Tawa Group's contractual indemnification claim asserted in Count X.  This is because Sections 6.3(a) and 6.4(c) apply only to *indemnification* claims for breach or inaccuracy of any representation or warranty contained in Article III.  They do not apply to claims for *fraud*, as Section 6.4(i) makes apparent:  "Nothing contained in this Article VI will limit in any way any remedies available to any Party or its Affiliates in respect of fraud or willful misconduct in connection with the transactions contemplated hereby."  Counts III, VI, VII, VIII and IX of the First Amended Complaint are absolutely immune to Penn National's limitations challenge.

With respect to those claims, Penn National resorts once again to Rule 9(b), arguing that those claims must be dismissed because the pleading does not identify the claim files Penn National withheld during the due diligence process.  Again, Rule 9(b) does not require that level of specificity.  The allegations that Penn National breached the warranty in MTA Section 3.8(c) because it did not make available during due diligence *all* of the claim files encapsulates the "who, what, where, when, how and why" of the alleged fraud and, thus, plainly suffices.

Respectfully submitted,

Seitz Ross Aronstam & Moritz LLP

*Of Counsel*:

 */s/ David E. Ross*
_____
Collins J. Seitz, Jr. (Bar No. 2237)
Edward F. Ruberry
David E. Ross (Bar No. 5228)
Ellen D. Jenkins
100 S. West Street, Suite 400
Ruberry, Stalmack & Garvey, LLC
Wilmington, DE  19801
500 W. Madison Street, Suite 2300
(302) 576-1600
Chicago, IL  60661
cseitz@seitzross.com
(312) 466-8050
dross@seitzross.com
Ed.Ruberry@rsg-law.com
Ellen.Jenkins@rsg-law.com

*Counsel for Plaintiffs Tawa plc, QX*
*Reinsurance Company Limited and PRO IS, Inc.*

Dated:  November 27, 2013

21

## <u>CERTIFICATE OF SERVICE</u>

I, David E. Ross, hereby certify that on November 27, 2013, a true copy of the foregoing

*Plaintiffs' Answering Brief in Opposition to Defendant's Motion to Dismiss Plaintiffs' First*

*Amended Complaint* was served via electronic mail upon the following counsel of record:

> Todd C. Schiltz
> Lindsay O. Clizbe
> 1100 N. Market Street
> Suite 1000
> Wilmington, DE  19801-1254
> todd.schiltz@dbr.com
> lindsay.clizbe@dbr.com
>
> *Counsel for Defendant Pennsylvania*
> *National Mutual Casualty Insurance*
> *Company*

 */s/ David E. Ross*
David E. Ross (Bar No. 5228)