# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAWA PLC, QX REINSURANCE COMPANY LIMITED and PRO IS, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 13-1427-LPS |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

### PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Of Counsel*:

Edward F. Ruberry
Ellen D. Jenkins
RUBERRY, STALMACK & GARVEY, LLC
500 W. Madison Street, Suite 2300
Chicago, IL  60661
(312) 466-8050
Ed.Ruberry@rsg-law.com
Ellen.Jenkins@rsg-law.com

SEITZ ROSS ARONSTAM & MORITZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
David E. Ross (Bar No. 5228)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
dross@seitzross.com

*Counsel for Plaintiffs Tawa plc, QX Reinsurance Company Limited and PRO IS, Inc.*

Dated:  December 10, 2014

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................1

    I.      Penn National's Latest Construction Of Section 6.4(i) Is Untenable .........................1

    II.     Section 6.4(i) Applies To The Tawa Group's Equitable Fraud Claims......................4

    III.    The Equitable Fraud Claims Cannot Swallow Up The Common Law Fraud
           Claims ........................................................................................................................4

    IV.    Penn National's April 21, 2014 Letter And The Documents It Appended
           Conclusively Establish Nothing and, More Important, Substantiate The
           Section 3.5(a) ............................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Abry Partners V, LP v. F&W Acquisition LLC*,
    891 A.2d 1032 (Del. Ch. 2006)..................................................................................1, 3

*Airborne Health, Inc. v. Weil, Gotshal & Manges, LLP*,
    984 A.2d 126.................................................................................................................3, 6

*Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*,
    2010 Del. Ch. LEXIS 107 (Del. Ch. May 11, 2010) ..........................................................6

*Catamaran Acquisition Corp. v. Spherion Corp.*,
    2001 Del. Super. LEXIS 227 (Del. Super. Ct. May 31, 2001) ..........................................5

*E.I. du Pont de Nemours & Co. v. HEM Research, Inc.*,
    1989 Del. Ch. LEXIS 132 (Del Ch. Oct. 13, 1989)............................................................5

*GRT, Inc. v. Marathon GTF Tech., Ltd.*,
    No. 5571-CS, 2011 Del. Ch. LEXIS 99 (Del. Ch. July 11, 2011).......................................3

*Kolber v. Body Central Corp.*,
    2012 U.S. Dist. LEXIS 105755 (D. Del. July 30, 2012) ....................................................6

*Messick v. Moore*,
    994 Del. Ch. LEXIS 231 (Del. Ch. Oct. 26, 1994).............................................................1

*Nacco Indus., Inc. v. HB-PS Holding Co., Inc.*,
    997 A.2d 1 (Del. Ch. 2009)................................................................................................6

*Northpointe Holdings, Inc. v. Nationwide Emerging Managers, LLC*,
    2010 Del. Super. LEXIS 395 (Del. Super. Sept. 14, 2010) .......................................2, 4, 6

*Norton v. Poplos*,
    443 A.2d 1 (Del. 1981) .................................................................................................1, 5

*Osram Sylvania Inc. v. Townsend Ventures, LLC*,
    2013 Del. Ch. LEXIS 281 (Nov. 19, 2013) ........................................................................6

*Perlmutter v. Salton, Inc.*,
    2010 U.S. Dist. LEXIS 100659 (D. Del. Sept. 24, 2010), *14-15.......................................6

*Shore Builders, Inc. v. Old Court Ventures, Inc.*,
    616 F. Supp. 1004 (D. Del. 1985).......................................................................................5

# TABLE OF AUTHORITIES
## (Continued)

**Cases**     **Page(s)**

*U.S. West, Inc. v. Time Warner Inc.*,
    1996 Del. Ch. LEXIS 55, *83 (Del. Ch. June 6, 1996) ..................................................4, 6

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    2006 Del. Ch. LEXIS 206 (Del. Ch. Dec. 12, 2006) ...........................................................6

*Zebroski v. Progressive Direct Insurance Company*,
    C.A. No. 8816-VCP (Del. Ch. Apr. 30, 2014).....................................................................7

**OTHER AUTHORITIES**

<u>Black's Law Dictionary</u> 1294 (6th Ed. 1990)..................................................................................1

*Williston on Contracts*
    § 1487 p. 322 (3d ed.1970) ................................................................................................5

**ARGUMENT**

I.  Penn National's Latest Construction Of Section 6.4(i) Is Untenable

Section 6.4(i) of the parties' Master Transaction Agreement (the "MTA") provides, "Nothing contained in this ARTICLE VI will limit in any way any remedies available . . . in respect of fraud or willful misconduct . . . ." Penn National now argues that because Section 6.4(i) refers to "remedies," and not "claims" or "causes of action," it cannot be read as cross-referencing the MTA's survival/limitations provision appearing in Section 6.4(c), and, thus, does not preserve claims or causes of action based on fraud not brought (or noticed) within 18 months of the Closing.[1] (*Id.* at 2-3) To Penn National, Section 6.4(i) means only that, in the event of fraud, the aggrieved party may seek damages in excess of $8 million.

Penn National's latest construction of Section 6.4(i) is untenable. To begin, as their labels reflect, most of the claims that Penn National contends are time-barred seek rescission based on either common law fraud or equitable fraud. Under Delaware law, rescission is a *remedy*. *See Norton v. Poplos*, 443 A.2d 1, 8 (Del. 1981) ("Essentially, the equitable remedy of rescission results in abrogation or "unmaking" of an agreement . . . ."); *Messick v. Moore*, 994 Del. Ch. LEXIS 231, *12 (Del. Ch. Oct. 26, 1994) ("Rescission is a remedy based upon the concept that allowing a party to keep a benefit resulting from his own misstatements is inequitable."). Even *Abry Partners V, LP v. F&W Acquisition LLC*, 891 A.2d 1032, 1036 (Del. Ch. 2006), a decision Penn National features in both of its briefs, recognizes this: "[I]t is

---

[1] Penn National's interpretation of the word "remedy" is unduly restrictive, and contrary to its plain meaning, in any event. Black's defines "remedy" as: "The rights given to a party by law or contract which that party may exercise upon a default by the other contracting party, or upon the commission of a wrong (a tort) by another party." Black's Law Dictionary 1294 (6th Ed. 1990). Under this definition, the Tawa Group's fraud claims cannot be separated from any remedies the Tawa Group might seek.

difficult to identify an economically-sound rationale for permitting a seller to deny *the remedy of rescission* to a buyer when the seller is proven to have induced the contract's formation or closing by lying about a contractually-represented fact." (Emphasis added.)  So, too, does *Northpointe Holdings, Inc. v. Nationwide Emerging Managers, LLC*, 2010 Del. Super. LEXIS 395, *22 (Del. Super. Sept. 14, 2010), a decision Penn National has described as "instructive." (Dkt. 26 at 26)  As *Northpointe* instructs, "[R]escission is a *remedy* [that can be] awarded by law [or equity] courts." *Id*. (Emphasis added.)  By stating that nothing contained anywhere in Article VI will limit *in any way* any *remedies* available for fraud, Section 6.4(i) renders all of the Tawa Group's rescission claims immune from Penn National's attack based on Section 6.4(c).

Setting that aside, Penn National's construction of Section 6.4(i) is untenable for another, independent reason:  it cannot be harmonized with Section 6.5.  Section 6.5 reads as follows:

> From and after the Closing, this <u>ARTICLE VI</u> sets forth the sole and exclusive remedy for any breach, inaccuracy, violation or nonfulfillment of this Agreement (including any representation [or] warranty . . . contained in this Agreement), regardless of whether a claim or counterclaim is based in tort, contract or any other legal theory . . . .  In furtherance of the foregoing, each Party hereby irrevocably waives all rights, claims, counterclaims and causes of action (*other than claims or counterclaims of, or causes of action arising from, fraud*) it may have against the other Party arising under or based upon this Agreement . . . .

(Emphasis added.)  Penn National relies on Section 6.5 in its Reply Brief but, tellingly, quotes only the first sentence. (Dkt. 28 at 2)  The second sentence is key, however, because it excepts from Section 6.5's waiver language claims and causes of action for fraud.  Given this exception, Section 6.5 can only mean that in the absence of fraud, the aggrieved party must assert a contractual indemnity claim and abide by the procedures, limitations and cap contained in Article VI, but that in the presence of fraud, the aggrieved party may assert a fraud (or fraud-based) claim and need not abide by the procedures, limitations and cap contained in Article VI.  This is the only construction that acknowledges that Article VI, entitled "**INDEMNIFICATION**,"

2

governs contractual indemnity claims only, and it is the only construction that gives meaning to Section 6.5's fraud exception.[2]

If Penn National's construction were correct, the parties would have agreed that in the event one of them induced the MTA by fraudulently misrepresenting a contractually-warranted fact and that fraud went undiscovered for more than 18 months, then the aggrieved party would have no recourse. This defies logic, given that fraudulently concealed facts are, by nature, difficult to discover and given that the MTA contemplated that the parties would disclose facts within their knowledge or easily discovered. It would hardly be "extraordinary" (Penn National's word) for contracting parties to agree that, for purposes of fraud (or fraud-based) claims, a contractual representation or warranty would have an indefinite duration. Indeed, at least one Delaware court has indicated that a survival/contractual limitations provision is unenforceable if fraud is present. *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2011 Del. Ch. LEXIS 99, *50 n.68 (Del. Ch. July 11, 2011).[3] Consistent with this principle, Section 6.5—working in tandem with Section 6.4(i)—preserves all fraud or fraud-derived claims arising under or based on the MTA not brought (or noticed) within eighteen months of the Closing.

---

[2] Thus, the only claim in the Second Amended Complaint that is subject to the restrictions and procedures set forth in Article VI is the claim for contractual indemnity stated in Count XVIII, which is based on Penn National's non-fraudulent breach of certain warranties and seeks as a remedy indemnification of the Tawa Group's resultant monetary "Loss" up to $8 million.

[3] Even in the absences of Section 6.4(i), Penn National could not enforce the survival/contractual limitations provision in Section 6.4(c) to defeat the Tawa Group's claims premised on intentional fraud. *See Airborne Health, Inc. v. Weil, Gotshal & Manges, LLP*, 984 A.2d 126, 136-37 ("Because of Delaware's strong public policy against intentional fraud, a knowingly false contractual representation can form the basis for a fraud claim, regardless of the degree to which the agreement purports to disclaim or eliminate tort remedies."). Thus, in *Abry*, the court invoked Delaware public policy and held that a provision in the contested stock purchase agreement stating that indemnity was the exclusive remedy available for contractual misrepresentations did not bar the plaintiff's rescission claim based on intentional fraud. 891 A.2d at 1064.

II.      Section 6.4(i) Applies To The Tawa Group's Equitable Fraud Claims

Penn National argues for the first time on Reply that Section 6.4(i) cannot salvage the Tawa Group's equitable fraud claims because they do not require a showing of intent. (Dkt. 28 at 3 n.6) But in making its argument, Penn National misquotes Section 6.4(i). According to Penn National, Section 6.4(i) applies only to claims of "'fraud *and* willful misconduct,' both of which require intent, but not to claims of equitable fraud, which do not." (*Id.*) (Emphasis added.)

This is misleading because Section 6.4(i) actually applies to claims of "fraud *or* willful misconduct." The provision's use of the disjunctive "or" reflects that, for purposes of Section 6.4(i), fraud *is not* restricted to the intentional variety. If that were the parties' intent, there would have been no reason for them to include the word "fraud" in Section 6.4(i); the words "willful misconduct" would have sufficed. Furthermore, when they entered into the MTA, Penn National and the Tawa Group agreed that Delaware law would govern all disputes arising out of the MTA. Because Delaware law has long recognized claims for both common law fraud and equitable fraud, Penn National and the Tawa Group necessarily agreed that the exception in Section 6.4(i) encompasses both types of fraud claims.

III.      The Equitable Fraud Claims Cannot Swallow Up The Common Law Fraud Claims

In its Reply Brief, Penn National argues that allowing the Tawa Group's equitable fraud claims to proceed would, essentially, swallow the concept of common law fraud whole. (Dkt. 28 at 6) This is inaccurate. The decisions cited in the Reply Brief teach that an equitable fraud claim may proceed only where 1) a special relationship between the parties gives rise to an equitable right, or 2) the plaintiff seeks a special remedy that only equity can afford. *U.S. West, Inc. v. Time Warner Inc.*, 1996 Del. Ch. LEXIS 55, *83 (Del. Ch. June 6, 1996); *Northpointe Holdings, Inc. v. Nationwide Emerging Mgrs., LLC*, 2010 Del. Super. LEXIS 395, *21-22 (Sept.

14, 2010). In this case, the Tawa Group has not alleged the existence of a special relationship, but it is seeking, as an alternative to its common law rescission claims, a special remedy that only equity can afford: rescission of a contract based on innocent misrepresentations.

It is beyond cavil that such claims are cognizable under Delaware law, and that, in the Delaware state court system, the equity courts have exclusive jurisdiction over them. *See Norton,* 443 A.2d at 8 ("But in addition to rescission for fraudulent misrepresentation . . . rescission may also be granted under certain circumstances for innocent misrepresentations . . . .") (citing *Williston on Contracts* § 1487 p. 322 (3d ed. 1970)); *E.I. du Pont de Nemours & Co. v. HEM Research, Inc.,* 1989 Del. Ch. LEXIS 132, 14 n.12 (Del Ch. Oct. 13, 1989) ("It should be noted that in cases involving a prayer for rescission based upon a claim of *innocent* misrepresentation, the equity court has exclusive jurisdiction."); *Shore Builders, Inc. v. Old Court Ventures, Inc.*, 616 F. Supp. 1004, 1012 (D. Del. 1985) ("[A] material misrepresentation, innocently made, but nevertheless false, renders a contract voidable when one of the parties justifiably relies on the misstatement in making the contract."). In cases where the plaintiff cannot establish that the defendant induced the contract through knowing or reckless misrepresentations, the plaintiff has no *legal* claim or remedy and "must turn to *equity* for relief." *Catamaran Acquisition Corp. v. Spherion Corp.*, 2001 Del. Super. LEXIS 227, *11 (Del. Super. Ct. May 31, 2001) (emphasis added). Only equity can fashion a remedy where the plaintiff alleges equitable fraud.[4]

---

[4] As *Catamaran Acquisition Corp.* makes clear, these special remedies include rescissory damages, which a plaintiff may recover when rescission is warranted but impractical under the circumstances. 2001 Del. Super. LEXIS 227, *16. In its Reply Brief, Penn National points out that rescissory damages can be awarded at law. (Dkt. 28 at 9 n.18). This is true, but it is also true that rescissory damages sought on the basis of an innocent misrepresentation may only be awarded in equity. *Id.* at *18-19.

Here, the Tawa Group has pled its claims for rescission based on common law fraud and its claims for rescission based on equitable fraud *in the alternative*. Although such alternative pleading may not be feasible in the Delaware state court system due to the jurisdictional division between law and equity courts, this Court has jurisdiction over both legal and equitable claims, as Penn National has conceded. (Dkt. 28 at 5) The Tawa Group is simply asking the Court to exercise its dual jurisdiction and allow the alternative claims to proceed on parallel tracks.

Contrary to Penn National's assertion on Reply, the Tawa Group's rescission claims based on equitable fraud do not conflict with "*US West* and its progeny." (Dkt. 28 at 7 n.14) In each of the cited cases, the court dismissed (or otherwise rejected) an equitable fraud claim because there was no special relationship between the parties and the plaintiff had not requested a special remedy available only in equity.[5] From the Tawa Group's perspective, these cases

---

[5] *See U.S. West, Inc.*, 1996 Del. Ch. LEXIS 55, *77-84 (dismissing equitable fraud claim for lack of a special relationship and because the plaintiff was not seeking rescission or any other exclusively equitable remedy based on an innocent misrepresentation); *Northpointe Holdings, Inc., LLC*, 2010 Del. Super. LEXIS 395, 821-22 (dismissing equitable rescission claim because there was no special relationship between the parties and because the claim was premised on common law fraud); *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 Del. Ch. LEXIS 281, *51-52 (Nov. 19, 2013) (rejecting equitable fraud claim because the parties were not in a special relationship justifying a departure from the traditional framework of common law fraud); *Airborne Health, Inc.*, 984 A.2d at 144 (same); *Kolber v. Body Central Corp.*, 2012 U.S. Dist. LEXIS 105755, *14 (D. Del. July 30, 2012) (dismissing equitable fraud claim due to lack of a special relationship and any request for equitable relief); *Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*, 2010 Del. Ch. LEXIS 107 (Del. Ch. May 11, 2010) (allowing plaintiff's common law fraud claim for damages but dismissing equitable fraud claim for damages because plaintiff alleged no special relationship and sought no equitable remedy); *Perlmutter v. Salton, Inc.*, 2010 U.S. Dist. LEXIS 100659 (D. Del. Sept. 24, 2010), *14-15 (dismissing negligent misrepresentation/equitable fraud claim because plaintiff failed to allege a special relationship); *Nacco Indus., Inc. v. HB-PS Holding Co., Inc.*, 997 A.2d 1 (Del. Ch. 2009) (upholding common law fraud claim for damages but dismissing companion equitable fraud claim for damages due to the lack of a special relationship); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 2006 Del. Ch. LEXIS 206, *6-7 (Del. Ch. Dec. 12, 2006) (ruling plaintiff had not alleged a cognizable equitable fraud claim because no fiduciary relationship existed between the parties and because

6

were not "wrongly decided." (*Id.* at 8) Rather, they all were correctly decided but are distinguishable because none involved a claim for the exclusively equitable remedy the Tawa Group is seeking here: rescission of a contract based upon innocent misrepresentations.

*Zebroski v. Progressive Direct Insurance Company*, C.A. No. 8816-VCP (Del. Ch. Apr. 30, 2014), which Penn National sent to the Court on May 9, 2014, does not undermine the Tawa Group's claims for rescission based on innocent misrepresentations. In *Zebroski*, an insured asserted an equitable fraud claim seeking to rescind, on the ground of mutual mistake, a release he had executed in favor of his insurer. The court dismissed the claim, reasoning that the insured had not adequately alleged the existence of a special relationship and was not seeking a remedy that only equity could afford. On this latter point, the court explained that the insured was essentially asking to court to decide whether the release barred him from pursuing claims against the insurer for personal injury coverage. Because Delaware law courts regularly adjudicate analogous claims involving the validity of releases raised as a defense to tort claims, the *Zebroski* court concluded that the insured had an adequate remedy at law. *Zebroski* is easily distinguished, and not only because the instant case does not involve an attempt to avoid a release on the basis of mutual mistake. Here, the Tawa Group is attempting to rescind a corporate acquisition agreement based on alleged innocent misrepresentations by the seller that induced the Tawa Group to close the deal. On this claim, the Tawa Group has no adequate remedy at law and may obtain rescissory relief only in equity. *Zebronski* is inapposite.

---

the plaintiff sought the legal remedy of damages, rather than a special remedy afforded by the court's equitable powers).

IV.  Penn National's April 21, 2014 Letter And The Documents It Appended Conclusively Establish Nothing and, More Important, Substantiate The Section 3.5(a) Claims

Contradicting allegations in the Second Amended Complaint, Penn National asserts on Reply that it "delivered" true and complete copies of all of the Dackman Policies prior to the date of the MTA, as warranted in Section 3.5(a). (Dkt. 28 at 9) To buttress this factual assertion Penn National attached as an Exhibit to its Reply Brief an April 21, 2014 letter from its counsel to the Tawa Group's counsel asserting that every document comprising Exhibit E to Penn National's Opening Brief, except the declaration page of the 96-97 Dackman Policy, was in the Books and Records and that every such document was in the Electronic Access Data. The April 21, 2014 letter enclosed documents concerning the declarations page of the 96-97 Policy that Penn National claims were in the Electronic Access Data. In its Reply Brief, Penn National argues that those documents are "undisputedly authentic," such that the Court may consider them. (Dkt. 28 at 10 n.20-21)

The documents in question are not, however, "undisputedly authentic" because, notwithstanding Penn National's April 21, 2014 letter, the Tawa Group does not concede that the Electronic Access Data included them. Discovery, including depositions of those involved in compiling and reviewing the information disclosed during due diligence, will be needed to confirm what was in the Electronic Access Data.

Furthermore, by admitting in the April 21, 2014 letter that the Books and Records did not include the declarations page for the June 1, 1996 to June 1, 1997 Dackman Policy, Penn National has admitted its breach. Again, Penn National warranted in Section 3.5(a) that it had "*delivered*" true and complete copies of all of the Dackman policies to the Tawa Group prior to the Closing. (Emphasis added.) Making a document available in an electronic database is not

8

the same as delivering, *i.e.*, transferring physical possession of, the document.  Section 3.8(a) makes that abundantly clear because Section 3.8(a) uses the terms to mean different things:

> Set forth on Schedule 3.8(a) of the Cedent Disclosure Schedule are true and correct copies of all documents, data and other information *delivered* to Parent or its Affiliates prior to the date of this Agreement and in connection with Parent's and Affiliates' review and investigation of the Subject Business, excluding all documents, data and information *made available* to Parent and its Affiliates by access to Cedent's computer system from December 15, 2010 to on or about March 14, 2011 (the "**Electronic Access Data**.").

(Emphasis added.)  Several other Sections of the MTA likewise reflect that Penn National and the Tawa Group did not use "deliver" and "make available" interchangeably in their contract. (*See, e.g.,* MTA § 2.4(d) ("Cedent shall deliver *or* make available to Reinsurer . . . the copies of all work papers used as the basis for determining the Proposed Closing Statement of Net Settlement.") (Emphasis added.)

Far from warranting the dismissal of the Tawa Group's claims based on Section 3.5(a), the April 21, 2014 letter appended to the Reply Brief establishes the falsity of Penn National's warranty and, thereby, *makes the Tawa Group's case for it*.

        Respectfully submitted,

        SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Edward F. Ruberry
Ellen D. Jenkins
RUBERRY, STALMACK & GARVEY, LLC
500 W. Madison Street, Suite 2300
Chicago, IL  60661
(312) 466-8050
Ed.Ruberry@rsg-law.com
Ellen.Jenkins@rsg-law.com

/s/ David E. Ross
Collins J. Seitz, Jr. (Bar No. 2237)
David E. Ross (Bar No. 5228)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
dross@seitzross.com

*Counsel for Plaintiffs Tawa plc, QX Reinsurance Company Limited and PRO IS, Inc.*

Dated:  December 10, 2014

## CERTIFICATE OF SERVICE

I, David E. Ross, hereby certify that on December 10, 2014, a true copy of the foregoing *Plaintiffs' Sur-Reply Brief in Opposition to Defendant's Motion to Dismiss Second Amended Complaint* was served via electronic mail upon the following counsel of record:

Todd C. Schiltz
Lindsay O. Clizbe
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue
Suite 1410
Wilmington, DE  19801-1621
todd.schiltz@dbr.com
lindsay.orr@dbr.com

*Counsel for Defendant Pennsylvania National Mutual Casualty Insurance Company*

        /s/ David E. Ross
        David E. Ross (#5228)